**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMANDA REVEN, and ANTOINETTE ARGENTINE, individually and on behalf of all others similarly situated, | )<br>)<br>)  **CIVIL ACTION NO.**:<br>) |
| Plaintiffs, | ) |
| v. | ) |
| THE CIGNA GROUP 401(K) PLAN RETIREMENT PLAN COMMITTEE, | )<br>) |
| Defendant. | ) |

## COMPLAINT

Plaintiffs, Amanda Reven and Antoinette Argentine ("Plaintiffs"), by and through their attorneys, on behalf of The Cigna Group 401(k) Plan (f/k/a the Cigna 401(k) Plan) (the "Plan"),[1] themselves and all others similarly situated, state and allege as follows:

## I.    INTRODUCTION

1.    This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciary, The Cigna Group 401(k) Plan Retirement Plan Committee (the "Committee" or "Defendant") for breaches of its fiduciary duties.

---

[1] Effective as of February 13, 2023, "the Plan's name was changed from Cigna 401(k) Plan to The Cigna Group 401(k) Plan." Report of Independent Auditors ("Auditor's Report"), attached to the 2023 Form 5500 for the Plan ("2023 Form 5500"), at 3.

2.      The Plan is a defined contribution retirement plan, established pursuant to 29 U.S.C. § 1002(2)(A) and § 1002(34) of ERISA, that enables eligible participants to make tax-deferred contributions from their salaries to the Plan.

3.      To safeguard plan participants and beneficiaries, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries. Fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), with the "care, skill, prudence, and diligence" that would be expected in managing a plan of similar scope. 29 U.S.C. § 1104(a)(1)(B). These twin fiduciary duties are "the highest known to the law." *Sweda v. Univ. of Pennsylvania,* 923 F.3d 320, 333 (3d Cir. 2019).

4.      The Department of Labor ("DOL") has explicitly stated that employers are held to a "high standard of care and diligence" and must, among other duties, both "establish a prudent process for selecting investment options and service providers." [2]; *see also Tibble v. Edison Int'l,* 135 S. Ct. 1823, 1823 (2015) ("*Tibble I*") (reaffirming the ongoing fiduciary duty to monitor a plan's investment options).

5.      Under 29 U.S.C. § 1104(a)(1), a plan fiduciary must give substantial consideration to the cost of investment options. "Wasting beneficiaries' money is imprudent. In devising and implementing strategies for the investment and management of trust assets, trustees are obligated to minimize costs." Uniform Prudent Investor Act (the "UPIA"), § 7.

6.      "The Restatement … instructs that 'cost-conscious management is fundamental to prudence in the investment function,' and should be applied 'not only in making investments but

---

[2] *See* U.S. Dep't of Labor, *A Look at 401(k) Plan Fees*, (Sept. 2019), at 2, available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (last visited July 24, 2024).

also in monitoring and reviewing investments.'" *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016) (*en banc*) (quoting Restatement (Third) of Trusts, § 90, cmt. b) ("*Tibble II*").

7.    Additional fees of only 0.18% or 0.4% can have a large effect on a participant's investment results over time because "[b]eneficiaries subject to higher fees … lose not only money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble II*, 843 F.3d at 1198 ("It is beyond dispute that the higher the fees charged to a beneficiary, the more the beneficiary's investment shrinks.").

8.    The Supreme Court recently reiterated that interpreting "ERISA's duty of prudence in light of the common law of trusts" a fiduciary "has a continuing duty of some kind to monitor investments and remove imprudent ones" and a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones. *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 741 (2022).

9.    Plaintiffs allege that during the putative Class Period, Defendant, as a "fiduciary" of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties owed to the Plan, to Plaintiffs, and to the other participants of the Plan by, *inter alia*, failing to objectively and adequately review the Plan's investment portfolio, initially and on an ongoing basis, with due care to ensure that each investment option was prudent, in terms of performance.

10.    At all times during the Class Period, the Plan had over nine billion dollars in assets under management. At the start of the Class Period in 2019, the Plan had $9,922,258,471 in assets under management. *See* 2019 Form 5500 for the Plan ("2019 Form 5500"), Schedule H at 2.

11.     By 2023, the Plan had $12,937,846,663 in assets under management. *See* 2023 Form 5500, Schedule H at 2.

12.     The Plan's assets under management qualifies it as a jumbo plan in the defined contribution plan marketplace, and among the largest plans in the United States.  In 2021, only 0.2 percent (1,011 of 641,747) of plans in the country had more than $1 billion in assets under management.[3] In addition, this was true at the start of the Class Period in 2019 where only 0.1 percent (776 of 603,217) of 401(k) plans in the country were as large as the Plan.[4]

13.     As a jumbo plan, the Plan had substantial bargaining power regarding the fees and expenses that were charged against participants' investments.

14.     The Plan is also large in terms of the number of its participants. At the beginning of the Class Period, the Plan had 77,695 participants. *See* 2019 Form 5500, at 2. By 2023, the Plan had 88,684 participants. *See* 2023 Form 5500, at 2. For comparison, according to information derived from ERISApedia.com's database, a service that compiles all Form 5500s filed with the Dept. of Labor ("DOL") by retirement plans, in 2020, there were only 123 defined contribution plans (401k, 401a, and 403b) in the country with between 50,000 plus participants with account balances.

15.     With regard to the Plan's investments, Defendant breached its fiduciary duty of prudence by selecting and/or maintaining a certain stable-value investment with lower crediting rates when compared to available similar or identical investments with higher crediting rates. The crediting rate is the guaranteed rate of return for the investment fund.

---

[3] *See* The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at Plans, 2021 at Ex. 1.2, p. 7., available at https://www.ici.org/system/files/2024-08/24-ppr-dcplan-profile-401k.pdf.

[4] *See* The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2019 at Ex. 1.2, p. 7, available at https://www.ici.org/system/files/2022-09/22-ppr-dcplan-profile-401k.pdf.

16.      Specifically, Defendant allowed substantial assets in the Plan to be invested in the Plan's Fixed Income Fund ("Cigna FIF"), that "is supported by four separate fully benefit-responsive investment contracts, including a traditional investment contract and three synthetic investment contracts." Auditor's Report attached to 2019 Form 5500, at 13. The Cigna FIF invested in a traditional guaranteed investment contract ("GIC") with Prudential Retirement Insurance & Annuity Co. ("PRIAC")[5] and three synthetic GICs offered by Prudential Insurance Company of America ("PICA"), Voya Retirement Insurance and Annuity Company ("VRIAC"), and Massachusetts Mutual Life Insurance Company ("MassMutual") (collectively, PRIAC, PICA, VRIAC and MassMutual are referred to as the "Insurance Companies"), that provided significantly lower rates of return than comparable stable value funds that Defendant could have made available to Plan participants.

17.      A prudent fiduciary would not have included this underperforming investment option that also carried significantly more risk than other investment options that had similar goals, *i.e.,* preservation of investment assets.

18.      The Insurance Companies benefited significantly from participants in the Plan investing in the Cigna FIF. A prudent fiduciary who adequately monitored the Plan's investments and placed the interests of participants in the Plan above all would have recognized that the Cigna FIF was benefitting the Insurance Companies at the expense of the participants in the Plan.

19.      Plaintiffs also allege that Defendant breached the duties they owed to the Plan, to Plaintiffs, and to the other participants of the Plan by failing to defray[] reasonable expenses of

---

[5] From at least 2019 through 2022, the traditional guaranteed investment contract was with Prudential Retirement Insurance and Annuity Company ("PRIAC"). "Prudential Retirement Insurance and Annuity Company, was acquired by Empower on April 1, 2022 and renamed EAIC." *See* Report of Independent Auditors, attached to 2022 Form 5500 for the Plan, at 7.

administering the [Plan]. 29 U.S.C. § 1104(a)(A)(ii). Its failure stems from the use of Plan participant forfeited funds to reduce employer contributions to the Plan instead of using the funds to reduce or eliminate the amounts charged to Plan participants for Plan administrative costs. This action by the Defendant was a clear breach of the duties of prudence and loyalty to Plan participants and cost Plan participants millions of dollars.

20.     During the putative Class Period, Defendant, as a "fiduciary" of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties owed to the Plan, to Plaintiffs, and to the other participants of the Plan by, *inter alia*: (1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost and performance; and (2) failing to defray reasonable expenses of administering the Plan.

21.     Defendant's mismanagement of the Plan, to the detriment of participants and beneficiaries, constitutes a breach of the fiduciary duties of prudence, in violation of 29 U.S.C. § 1104. Its actions were contrary to actions of a reasonable fiduciary and cost the Plan and its participants millions of dollars.

22.     Based on this conduct, Plaintiffs assert claims against Defendant for breach of the fiduciary duty of prudence (Count I), breach of the fiduciary duty of loyalty (Count II), and breach of ERISA's Anti-Inurement Provision (Count III).

## II.     JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq*.

24.     This Court has personal jurisdiction over Defendant because the Plan is administered in this District meaning The Cigna Group transacts business in this District, resides in this District, and/or has significant contacts with this District, and because ERISA provides for nationwide service of process.

25.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendant resides and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because The Cigna Group does business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## III.    PARTIES

### Plaintiffs

26.     Plaintiff, Amanda Reven ("Reven"), resides in Indianapolis, Indiana. During her employment, Plaintiff Reven participated in the Plan. Ms. Reven invested in the Cigna FIF in the Plan and suffered injury to her Plan account due to the significant underperformance of the Cigna FIF. Plaintiff Reven also suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan administrative expenses which, if used to pay for administrative expenses, would have reduced or eliminated the amounts charged to Plaintiff Reven's individual account.

27.     Plaintiff, Antoinette Argentine ("Argentine"), resides in Copley, Ohio. During her employment, Plaintiff Argentine participated in the Plan. Ms. Argentine invested in the Cigna FIF in the Plan and suffered injury to her Plan account due to the significant underperformance of the Cigna FIF. Plaintiff Argentine also suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan administrative expenses which, if used to pay for administrative

expenses, would have reduced or eliminated the amounts charged to Plaintiff Argentine's individual account.

28.    Plaintiffs have standing to bring this action on behalf of the Plan because they participated in the Plan and were injured by Defendants' unlawful conduct. Plaintiffs are entitled to receive benefits in the amount of the difference between the value of their accounts currently, or as of the time their accounts were distributed, and what their accounts are or would have been worth, but for Defendants' breaches of fiduciary duties as described herein.

29.    Plaintiffs did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

**Defendant**

30.    Non-defendant, The Cigna Group ("Cigna" or the "Company"), is the sponsor of the Plan with a principal place of business at 1601 Chestnut Street, Philadelphia, Pennsylvania. *See* 2023 Form 5500, at 1, filed with the United States Department of Labor. "The Cigna Group is a global health company committed to a better future built on the vitality of every individual and every community." *See* https://investors.thecignagroup.com/overview/default.aspx last accessed on April 28, 2025.

31.    "The Retirement Plan Committee shall be a 'named fiduciary' with respect to this Plan within the meaning of ERISA, and as permitted or required by law, shall have exclusive authority and discretion to control and manage the operation and administration of this Plan, subject to proper delegation." Plan Doc. at 87.

32.     "The Retirement Plan Committee, or one or more fiduciaries named by the Retirement Plan Committee, or any delegate of either, shall from time to time select Investment Funds into which contributions under this Plan may be allocated." Plan Doc. at 52.

33.     Each member of the Retirement Plan Committee during the putative Class Period (referred to herein as John Does 1-10) is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), during the Class Period, because each had control over Plan management and/or authority or control over management or disposition of Plan assets.

34.     Members of the Retirement Plan Committee during the Class Period are collectively referred to herein as the "Committee Defendants."

## IV.     CLASS ACTION ALLEGATIONS[6]

35.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following proposed class ("Class"):

> All persons, except Defendants and any fiduciary of the Plan and their immediate family members, who were participants in or beneficiaries of The Cigna Group 401(k) Plan (f/k/a the Cigna 401(k) Plan) at any time between May 14, 2019 to the date of judgment (the "Class Period").[7]

36.     The members of the Class are so numerous that joinder of all members is impractical. The 2023 Form 5500 lists 88,684 Plan "participants with account balances as of the end of the plan year." 2023 Form 5500, at 2.

---

[6] Although this is a proposed class action, the allegations in this complaint are alternatively pled in derivative fashion on behalf of the Plan because class certification is not necessarily required for Plaintiffs to prosecute claims on behalf of the Plan and all participants. *See, e.g., In re: Wilmington Trust Corp.,* 2013 WL 4757843, at *3 (D. Del. Sept. 4, 2013) (granting plaintiffs' motion to proceed derivatively on behalf of all plan participants without class certification, because of the nature of such claims). ERISA Section 502(a), 29 U.S.C. § 1132(a), authorizes pension plan participants to bring suit on behalf of a plan to recover losses to a plan.

[7] Plaintiffs reserves their right to seek modification of the close of the Class Period in the event that further investigation/discovery reveals a more appropriate end period.

37.    Plaintiffs' claims are typical of the claims of the members of the Class. Like other Class members, Plaintiffs participated in the Plan and have suffered injuries as a result of Defendant's mismanagement of the Plan. Defendant treated Plaintiffs consistently with other Class members, and managed the Plan as a single entity. Plaintiffs' claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendant as alleged herein, and all members of the Class have been similarly affected by Defendant's wrongful conduct.

38.    There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

      A.    Whether Defendant is a fiduciary of the Plan;

      B.    Whether Defendant breached its fiduciary duty of prudence by engaging in the conduct described herein;

      C.    The proper form of equitable and injunctive relief; and

      D.    The proper measure of monetary relief.

39.    Plaintiffs will fairly and adequately represent the Class, and have retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action, and anticipate no difficulty in the management of this litigation as a class action.

40.    This action may be properly certified under Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of

separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

41.    In the alternative, certification under Rule 23(b)(2) is warranted because the Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## V.    THE PLAN

42.    "The Cigna Group 401(k) Plan ("Plan") is sponsored by The Cigna Group ("The Cigna Group"), previously Cigna Corporation, and prior to that, Cigna Holding Company (referred to hereinafter as "Cigna" or "The Cigna Group"), for the benefit of eligible employees and the eligible employees of a participating company." Plan Doc. at 1.

43.    "Plan is intended to constitute a profit-sharing plan and a defined contribution plan for purposes of the Code and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), with a "qualified cash or deferred arrangement" under Code Section 401(k)." *Id*.

44.    "Cigna most recently amended and restated this Plan, effective January 1, 2021, to incorporate previously adopted amendments and to make certain other changes. Cigna has subsequently amended this Plan." *Id*.

45.    "Cigna intends that except where a different effective date is provided herein or required by law, the Plan, as amended and restated, effective January 1, 2025, shall apply to all Employees (or former Employees) who remain or become Participants in the Plan; provided, however, that the provisions of the Plan in effect relating to either (a) benefits provided under the

Plan, (b) eligibility to participate in the Plan, or (c) vesting of benefits under the Plan as of a Participant's Severance from Employment with Cigna and all Related Companies shall apply." *Id*. at 2.

46.     "The Cigna Group 401(k) Plan (Plan) helps [employees] save for retirement and other long-range financial goals. When [employees] join the Plan, [they will have a savings-type account that holds the contributions you and Cigna make to the Plan as well as the investment returns on those contributions. [Employee's] Plan account and all other Plan assets are held in a trust fund that is separate from Cigna's assets." SPD at 1.

47.     The Plan is a defined contribution, profit sharing plan. *See* SPD at 51; *see also* Plan Doc. at 16 (The Plan is "a defined contribution profit sharing plan.").

48.     Employees are automatically enrolled in the Plan 30 to 45 days after their date of hire. *See* SPD at 1 ("Automatic enrollment occurs 30 to 45 days after you are hired (or rehired) as an eligible employee or have a status change to an eligible employee.").

49.     Included in the Plan's investment options is the "fixed income fund." Auditors Report attached to 2023 Form 5500, at 7 ("The Plan's investment options include a fixed income fund, which is supported by both traditional and synthetic fully benefit-responsive investment contracts.").

50.     "The Fixed Income Fund functions as a 'fund of funds', and blends the crediting rates of the individual investment contracts to create a single melded crediting rate for the Fixed Income Fund." *Id*.

51.     At the end of 2023, $3,808,952,000 in Plan assets were invested in the Cigna FIF. *See id*. at 14.

52.     The Cigna FIF consists of three synthetic GICs and one traditional GIC. *See id.* at 14-15.

53.     The chart below demonstrates the amount of Plan assets invested in the Cigna FIF during the Class Period.

| Plan Year | Plan Assets in the Cigna FIF |
|-----------|------------------------------|
| 2019 | $3,091,873,000 |
| 2020 | $3,488,571,000 |
| 2021 | $3,697,864,000 |
| 2022 | $3,685,084,000 |
| 2023 | $3,808,952,000 |

*Eligibility*

54.     Typically, employees are eligible to participate in the Plan on their first day of employment. *See* Plan Doc. at ("An Employee shall be eligible to become a Participant in this Plan on the date on which he becomes an Eligible Employee.").

*Contributions*

55.     There are different types of contributions that participants can make to their Plan account. *See* SPD at 2 ("You make regular Plan contributions by payroll deduction from your eligible earnings. You can make pre-tax contributions, Roth 401(k) contributions, or both.").

56.     Cigna matches participant contributions up to 5% of participants' eligible earnings. *See* SPD at 4 ("Cigna contributes: One dollar for each dollar of regular contributions you make of up to 4% of your eligible earnings; and 50 cents for each dollar of regular contributions you make in excess of 4% and up to 6% of your eligible earnings.").

57.     "Employer Contributions. Each Participating Company shall or may make, as applicable, contributions to this Plan by making payments to the Trustee as required or may be required under the following sections." Plan Doc. at 22.

*Vesting*

58.    Participants are immediately vested in their contributions. *See* SPD at 4 ("you are always 100% vested in your own Plan contributions.").

59.    For employer contributions, participants "become 100% vested in matching contributions that Cigna makes for plan years after December 31, 2009 once [they] have two years of vesting service." *Id.*

*Forfeitures*

60.    "If you terminate employment before you become 100% vested, you will forfeit any unvested matching contributions that Cigna made to your account." *Id.*

61.    "The amount in a Participant's Account which is forfeited in accordance with §8.3(a)(1) shall, during the continuation of the Plan, be applied towards the contributions made pursuant to §§3.4, 3.5 and 3.6. To the extent the Participating Companies choose not to apply all or any portion of such forfeitures towards such contributions and, instead, to contribute additional amounts to the Plan to fund such contributions, any remaining forfeitures shall be used for any permissible purpose, including but not limited to the payment of reasonable Plan expenses and/or the restoration of Account balances in accordance with §8.3(c)." Plan Doc. at 58.

## VI.    THE TOTALITY OF THE CIRCUMSTANCES DEMONSTRATES THAT DEFENDANTS FAILED TO ADMINISTER THE PLAN IN A PRUDENT MANNER

### A.    ERISA Fiduciaries Are Held to the Highest Standards Regarding Process and Methodology of Evaluating Investments

62.    As described in the "Parties" section above, Defendant was a fiduciary of the Plan.

63.    ERISA "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014) (quotation omitted). In addition to a duty to select prudent investments, under

ERISA, a fiduciary "has a continuing duty to monitor [plan] investments and remove imprudent ones" that exist "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble I*, 135 S. Ct. at 1828; *see also Hughes*, 142 S. Ct. at 741.

64.    As stated by the DOL: ERISA "requires plan fiduciaries, when selecting and monitoring service providers and plan investments, to act prudently and solely in the interest of the plan's participants and beneficiaries. Responsible plan fiduciaries also must ensure that arrangements with their service providers are 'reasonable' and that only 'reasonable' compensation is paid for services. …" DOL 408(b)(2) Regulation Fact Sheet.

65.    The duty "…to act solely in the best interest of participants has been a key tenet of ERISA since its passage." "Best Practices for Plan Fiduciaries," at 36, published by Vanguard, 2019.[8]

66.    Acting in the sole interest of plan participants is all encompassing. A fiduciary must monitor all investment options in a 401(k) plan as a prudent investment professional. *See* the U.S. Department of Labor, Employee Benefits Security Administration (EBSA)'s "Meeting Your Fiduciary Responsibilities," at 2 ("The duty to act prudently is one of a fiduciary's central responsibilities under ERISA. It requires expertise in a variety of areas, such as investments."), available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/meeting-your-fiduciary-responsibilities.pdf.

67.    A prudent investment professional, and hence a fiduciary, must regularly evaluate a fund's performance history, the portfolio manager's experience and tenure, changes to the fund's investment strategy, changes to the underlying assets in the investment, total assets under management within the fund, fees, and other relevant factors.

---

[8] Available at https://institutional.vanguard.com/iam/pdf/FBPBK.pdf?cbdForceDomain.

68.     With respect to investment returns, diligent investment professionals monitor the performance of their selected investments using appropriate industry-recognized "benchmarks" and prudently managed equivalents.

69.     The measurement of investments against prudently managed alternatives is critical given that these alternatives represent other investments available to a plan, which may increase the likelihood that participants reach/live their preferred lifestyle in retirement.

70.     Whether a plan fiduciary enlists the assistance of an investment manager, consultant, or advisor, the plan's fiduciaries are not relieved of fiduciary liability for selecting and monitoring the plan's investment options.

71.     It is black letter law that a fiduciary's duty to conduct an "independent investigation into the merits of a particular investment," is the "most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litigation*, 74 F.3d 420, 435 (3d Cir. 1996). *Hughes*, 142 S. Ct. at 738 (noting ERISA fiduciaries are required to "conduct their own independent evaluation to determine which investments may by prudently included in the plan's menu of options.").

72.     To the extent plan fiduciaries have adopted an investment policy statement, those fiduciaries "must comply with the plan's written statements of investment policy, insofar as those written statements are consistent with the provisions of ERISA." *Lauderdale v. NFP Retirement, Inc.*, 2022 WL 17260510, at * 10 (S.D. Cal. Nov. 17, 2022). That is, the investment policy statement must be written with the sole interest of the plan participant in mind.

73.     Plaintiffs did not have and do not have actual knowledge of the specifics of Defendant's decision-making process with respect to the Plan, including Defendant's processes (and execution of such) for selecting, monitoring, and removing the Plan's investments because this information is solely within the possession of Defendant prior to discovery. *See Braden v.*

*Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) ("If Plaintiffs cannot state a claim without pleading facts which tend systematically to be in the sole possession of defendants, the remedial scheme of [ERISA] will fail, and the crucial rights secured by ERISA will suffer.").

74.     In fact, in an attempt to discover the details of the Plan's mismanagement, Plaintiffs wrote to the Plan administrator to request, among other things, "all written instruments" governing or pertaining to the Plan, including "Investment Policy Statements, and amendments, exhibits, or appendices thereto" and "Investment Management Contracts, or other instruments under which the Plan was established or operated, and all amendments, exhibits, or appendices thereto," as well as any committee's meeting minutes. This request was made on March 19, 2025.

75.     By letter dated April 14, 2025, the Plan's administrator responded to Plaintiffs' request. No investment policy statement, to the extent it exists, or meeting minutes, to the extent they exist, were produced in response to Plaintiffs' request.

76.     Reviewing meeting minutes, when they exist, is the bare minimum needed to peek into a fiduciary's monitoring process. But in most cases, even that is not sufficient. For, "[w]hile the absence of a deliberative process may be enough to demonstrate imprudence, the presence of a deliberative process does not … suffice in every case to demonstrate prudence. Deliberative processes can vary in quality or can be followed in bad faith. In assessing whether a fiduciary fulfilled her duty of prudence, we ask 'whether a fiduciary employed the *appropriate* methods to investigate and determine the merits of a particular investment,' not merely whether there were any methods whatsoever." *Sacerdote v. New York Univ.*, 9 F.4th 95, 111 (2d Cir. 2021) (emphasis in original).

77.     For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes and methods based upon several factors as described below.

78.     Defendant's breaches of its fiduciary duties, relating to its overall decision-making, resulted in, *inter alia*, the selection (and maintenance) of the Cigna FIF in the Plan throughout the Class Period that wasted the assets of the Plan and the assets of participants because of unnecessary costs and underperformance.

**B.      Defendant Breached Its Fiduciary Duties by Causing the Plan to Offer the Cigna FIF**

**1.      Overview of GICs**

79.     For defined-contribution retirement plans, stable value investments are intended to provide participants with an option that protects their assets and is shielded from risks of loss, hence why they are called Guaranteed Investment Contracts or GICs.

80.     GICs are issued by insurance companies in the form of a fixed annuity contract. Pursuant to the terms of those contracts, the GICs provide for a guaranteed rate of return or "crediting rate" during a specified period.

81.     Large plans often offer "synthetic" stable value funds, like the Cigna FIF.

**2.      The Plan's Inclusion of Cigna FIF**

82.     At all relevant times, Defendant maintained the authority to exercise control over the Plan's investments, including the Plan's Cigna FIF.

83.     The Insurance Companies establish the crediting rates for their underlying GICs with the Plan.

84.     The Insurance Companies in most cases earn a "spread" equal to the difference between the crediting rate and the returns the Insurance Companies earn on the funds in their accounts.

**3.      There are Many GICs in the Marketplace with Competitive Crediting Rates**

85.    The marketplace for GICs is robust with many insurance companies offering GICs with competitive rates.

86.    Throughout the Class Period, identical or substantially identical stable value funds with higher crediting rates were available to the Plan but were not selected by Defendant.  Selecting investments with higher crediting rates than the Plan's investments would have directly impacted Plan participants by increasing their returns and the value of their accounts.  Additionally, the higher crediting rates would have had the effect of lowering any spread being enjoyed at the expense of Plan participants by the insurance companies.

87.    The Cigna FIF in the Plan had underwhelming crediting rates when compared against stable value GICs provided by other comparable carriers for other retirement plans:

| Year | Plan Name | No. of Participants | Plan Assets | Insurance Carrier | Crediting Rate[9] |
|---|---|---|---|---|---|
| **2019** | Baylor College of Medicine Retirement Plan | 12,587 | $1,278,730,175 | Lincoln Financial Group | 4.29% |
| | Jackson National Life Insurance Company Defined Contribution Plan | 5,002 | $1,090,110,381 | Jackson National Life Insurance | 4.28% |
| | Holzer Health System 401(a) Profit Sharing Plan | 1,896 | $179,609,420 | American United Life Insurance Company | 3.98% |
| | Transamerica 401(k) Retirement Savings Plan | 15,140 | $2,020,965,905 | Transamerica Financial Life Insurance Company | 3.85% |

---

[9] For crediting rates not identified in the plans' Form 5500s, the calculated yield is interest credited divided by the end of year balance.

| | | | | | |
|---|---|---|---|---|---|
| | American United Life Progress Sharing Plan and Trust | 3,051 | $377,919,056 | American United Life Insurance Company | 3.70% |
| | HCC Insurance Holdings Inc. 401(k) Plan | 2,515 | $355,957,124 | Massachusetts Mutual Life Insurance Company | 3.56% |
| | **Cigna Group 401(k) Plan** | **77,695** | **$9,922,258,471** | **PRIAC** | **3.80%** |
| | | | | **PICA** | **2.76%** |
| | | | | **MassMut** | **3.10%** |
| | | | | **VRIAC** | **2.22%** |
| 2020 | Baylor College of Medicine Retirement Plan | 12,905 | $1,493,377,139 | Lincoln Financial Group | 4.16% |
| | Alina 401(k) Retirement Savings Plan | 32,203 | $2,690,046,457 | Brighthouse Life Insurance Company | 3.72% |
| | HCC Insurance Holdings Inc. 401(k) Plan | 2,711 | $428,308,461 | Massachusetts Mutual Life Insurance Company | 3.56% |
| | American United Life Progress Sharing Plan and Trust | 2,699 | $435,970,029 | American United Life Insurance Company | 3.54% |
| | **Cigna Group 401(k) Plan** | **77,695** | **$9,922,258,471** | **PRIAC** | **3.20%** |
| | | | | **PICA** | **2.91%** |
| | | | | **MassMut** | **3.15%**[10] |
| | | | | **VRIAC** | **2.73%**[11] |

[10] 1/1-7/31 3.16%, 8/1-12/31 3.14%. *See* 2020 Form 5500, Schedule H, Line 4i – Schedule of Assets, at 38.
[11] 1/1-6/30 2.97%, 7/1-12/31 2.49%. *See* 2020 Form 5500, Schedule H, Line 4i – Schedule of Assets, at 20.

| | | | | | |
|---|---|---|---|---|---|
| 2021 | Gemba Group Annuity Plan | 969 | $118,565,852 | National Ohio Financial Services | 4.97% |
| | Baylor College of Medicine Retirement Plan | 13,391 | $1,692,013,731 | Lincoln Financial Group | 4.23% |
| | Holzer Health System 401(a) Profit Sharing Plan | 2,017 | $203,815,263 | American United Life Insurance Company | 4.02% |
| | American United Life Progress Sharing Plan and Trust | 3,183 | $493,267,284 | American United Life Insurance Company | 3.87% |
| | Gemba Group Annuity Plan | 969 | $118,565,852 | Principal Life Insurance Company | 3.84% |
| | **Cigna Group 401(k) Plan** | **77,695** | **$9,922,258,471** | **PRIAC** | **3.20%** |
| | | | | **PICA** | **2.91%** |
| | | | | **MassMut** | **3.11%** |
| | | | | **VRIAC** | **2.73%**[12] |
| | | | | | |
| 2022 | International Imaging Materials Inc. Retirement and Investment Plan | 445 | $59,443,888 | Lincoln National Life Insurance Co. | 4.89% |
| | Baylor College of Medicine Retirement Plan | 14,036 | $1,434,738,254 | Lincoln Financial Group | 4.37% |

---

[12] 1/1-6/30 2.97%, 7/1-12/31 2.49%. *See* 2021 Form 5500, Schedule H, Line 4i – Schedule of Assets, at 1.

| | | | | | |
|---|---|---|---|---|---|
| | American United Life Progress Sharing Plan and Trust | 3,235 | $439,262,320 | American United Life Insurance Company | 3.90% |
| | Jackson National Life Insurance Company Defined Contribution Plan | 4,650 | $1,149,061,601 | Jackson National Life Insurance | 3.83% |
| | Alina 401(k) Retirement Savings Plan | 34,554 | $2,678,277,538 | Brighthouse Life Insurance Company | 3.69% |
| | Trugreen Profit Sharing and Retirement Plan | 11,408 | $371,495,784 | Massachusetts Mutual Life Insurance Company | 3.67% |
| | **Cigna Group 401(k) Plan** | **77,695** | **$9,922,258,471** | **PRIAC**[13] | **3.20%** |
| | | | | **PICA** | **2.91%** |
| | | | | **MassMut** | **3.00%** |
| | | | | **VRIAC** | **2.73%**[14] |
| | | | | | |
| 2023 | Valley Hospital Retirement Defined Contribution Plan | 4,282 | $550,230,744 | Lincoln National Life Insurance Co. | 4.57% |
| | Mattel, Inc. Personal Investment Plan | 7,427 | $1,167,576,000 | Metropolitan Tower Life Insurance Co. | 3.71% |
| | Pomona Valley Hospital Medical | 4,219 | $525,201,271 | Lincoln National Life Insurance Co. | 3.64% |

[13] "PRIAC" and not "EAIC" identified in 2022 Form 5500, despite Empower's acquisition of PRIAC on April 1, 2022. *See* 2022 Form 5500, Schedule H, Line 4i – Schedule of Assets, at 18.
[14] 1/1-6/30 2.97%, 7/1-12/31 2.49%. *See* 2022 Form 5500, Schedule H, Line 4i – Schedule of Assets, at 18.

| | | | | |
|---|---|---|---|---|
| | Center Retirement Savings Plan | | | | |
| | Auto-Owners Insurance Company Retirement Savings Plan | 8,582 | $772,874,102 | Auto-Owners Life Insurance Company | 3.48% |
| | **Cigna Group 401(k) Plan** | **77,695** | **$9,922,258,471** | **PRIAC[15]** | **2.60%[16]** |
| | | | | **PICA** | **2.92%** |
| | | | | **MassMut** | **3.60%** |
| | | | | **VRIAC** | **2.96%** |

88.     Throughout the Class Period, the Cigna FIF underperformed the comparator funds by an average of over 24% as demonstrated in the table below.

| Year | Cigna FIF Average Rate of Return | Comparator Average Rate of Return | Cigna FIF Percentage of Underperformance |
|---|---|---|---|
| 2019 | 2.97% | 3.94% | 24.62% |
| 2020 | 3.00% | 3.75% | 20.00% |
| 2021 | 2.99% | 4.19% | 28.64% |
| 2022 | 2.96% | 4.06% | 27.09% |
| 2023 | 3.02% | 3.85% | 21.56% |
| **Average Underperformance during Class Period** | | | **24.38%** |

89.     In short, because the Plan held over $9 billion in assets under management at the start of the Class Period, it had considerable leverage to bargain for higher crediting rates.

90.     A prudent fiduciary would have known that other providers of fixed annuities offer substantially identical, better-performing stable value investments. A prudent fiduciary could have

---

[15] "PRIAC" and not "EAIC" identified in 2023 Form 5500, despite Empower's acquisition of PRIAC on April 1, 2022. *See* 2023 Form 5500, Schedule H, Line 4i – Schedule of Assets, at 19.
[16] 1/1-6/30 2.50%, 7/1-12/31 2.70%. *See* 2023 Form 5500, Schedule H, Line 4i – Schedule of Assets, at 19.

accomplished this goal by demanding higher crediting rates from the Insurance Companies and/or by submitting requests for proposals to the Insurance Companies and other providers of stable value investments.

91.     By selecting the Cigna FIF with underperforming crediting rates, Defendants failed to provide participants with an option that maximized the value of their investments.

92.     With the massive amount of assets under management in the Cigna FIF, the losses suffered by Plan participants were devastating.  Every additional expense imposed upon the participants compounds and reduces the value of their retirement savings over time. *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015). For example, a 1% higher fee over 35 years makes a 28% difference in retirement assets at the end of a participant's career.[17]

### C.     Defendant Improperly Reduced Cigna's Plan Contributions Through Forfeiture Accounts

93.     A Trust, adopted by Cigna under a trust agreement between Cigna and Prudential Bank & Trust, FSB, the trustee, was established to, among other things, hold contributions to the Plan. *See* Trust Agreement dated December 9, 2009 ("The Employer shall be responsible for collecting, forwarding and monitoring all contributions to be made to this Trust pursuant to the Plan."). Further, participant's "Plan account and all other Plan assets are held in a trust fund that is separate from Cigna's assets." SPD at 1.

94.     During the Class Period, Defendant breached its ERISA fiduciary duties by misusing the Plan's assets for Cigna's benefit and to the detriment of Plan participants.

---

[17]  Look at 401(k) Plan Fees, UNITED STATES DEPT. OF LABOR at 2 (Sept. 2019), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource center/publications/401k-plan-fees.pdf (accessed Feb. 14, 2025).

95.     As alleged above, Defendant had a choice on how to utilize forfeited amounts. At the discretion of Defendant in its fiduciary capacity, forfeitures may be used to either pay the Plan's expenses or reduce the Company's contributions to the Plan. *See* Plan Doc. at 58 ("Forfeiture amounts shall, during the continuation of the Plan, be applied towards the contributions made pursuant to §§3.4, 3.5 and 3.6. To the extent the Participating Companies choose not to apply all or any portion of such forfeitures towards such contributions and, instead, to contribute additional amounts to the Plan to fund such contributions, any remaining forfeitures shall be used for any permissible purpose, including but not limited to the payment of reasonable Plan expenses."); *but see also* Auditors Report attached to 2023 Form 5500 at 8-9 ("Any forfeited amounts are first used to pay Plan expenses, other than routine administrative expenses, as determined and directed by the Plan Administrator, and second, to reduce the amount of subsequent matching contributions otherwise payable by the participating Cigna company that employed the participant.").

96.     Using the forfeitures to reduce Cigna's contributions is always in the best interest of Cigna because that option would decrease its own contribution costs.

97.     Absent any risk that Cigna would be unable to satisfy its contribution obligations, using forfeitures to pay Plan expenses would be in the participants' best interest because that option would reduce or eliminate amounts otherwise charged to their accounts to cover such expenses.

98.     In deciding between using forfeitures to benefit Cigna or using forfeitures to benefit the participants, Defendant is presented with a conflict of interest in administering the Plan and managing and disposing of the Plan's assets.

99.     Despite the conflict of interest presented by this decision, Defendant failed to undertake any investigation into which option was in the best interest of the Plan's participants and beneficiaries.

100.    Defendant did not, for example, investigate whether there was a risk that Cigna would be unable to satisfy its contribution obligations if forfeitures were used to pay Plan expenses, or evaluate whether there were sufficient forfeitures to eliminate the Plan's expenses charged to participants and still offset a portion of Cigna's own contribution obligations, as a prudent person would have done.

101.    Defendant also failed to consult with an independent, non-conflicted decisionmaker to advise them in deciding upon the best course of action for allocating the forfeitures in the Plan, as a prudent person would have done.

102.    Although ERISA requires fiduciaries to manage the Plan's assets solely in the interest of participants and although the Plan grants Defendant discretion to use forfeitures to pay Plan expenses, thereby reducing or eliminating the amounts charged to participant accounts to cover such expenses, Defendant has consistently declined to use the Plan's assets for such purpose during the putative Class Period.

103.    Since at least the beginning of the Class Period, Defendant has improperly used forfeited non-vested Plan assets for Cigna's benefit to reduce future employer contributions instead of using the funds to benefit Plan participants.

104.    According to information from the Plan's Form 5500, the following represents the amount of the forfeitures improperly used to offset Cigna's contributions to the Plan, and the amounts used to pay for Plan administration expenses:

| Plan Year | Company Contributions | Offset Plan Expenses |
|---|---|---|
| 2019 | $         900,000.00 | $0 |
| 2020 | $       3,200,000.00 | $0 |
| 2021 | $       4,100,000.00 | $0 |
| 2022 | $       3,800,000.00 | $0 |
| 2023 | $       5,500,000.00 | $0 |
| **Total** | **$     17,500,000.00** | **$0** |

### COUNT I
### Breaches of Fiduciary Duty of Prudence

105.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

106.    At all relevant times, the Committee and its members ("Prudence Defendants") were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

107.    As fiduciaries of the Plan, the Prudence Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). These fiduciary duties included managing the assets of the Plan for the sole and exclusive benefit of Plan's participants and beneficiaries, and acting with the care, skill, diligence, and prudence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

108.    The Prudence Defendants breached these fiduciary duties in multiple respects as discussed throughout this Complaint. Prudence Defendants did not make decisions regarding the Plan's investment lineup based solely on the merits of each investment and what was in the interest of Plan's participants. Instead, the Prudence Defendants selected and retained investment options in the Plan despite poor performance in relation to other comparable investments.

27

109.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars of losses due to excessive costs and lower net investment returns. Had the Prudence Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and Plan's participants would have had more money available to them for their retirement.

110.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Prudence Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in their Prayer for Relief.

111.    The Prudence Defendants knowingly participated in each breach, knowing that such acts were a breach, and failed to make any reasonable and timely effort under the circumstances to remedy the breaches.

## COUNT II
### Breach of Fiduciary Duty of Loyalty

112.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

113.    At all relevant times, the Committee Defendants ("Loyalty Defendants") were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

114.    As fiduciaries of the Plan, these Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

115.    Pursuant to 29 U.S.C. § 1104(a)(1)(A), the Loyalty Defendants were required to discharge their duties to the Plan "solely in the interest of the participants and beneficiaries" and

"for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

116.     The Loyalty Defendants failed to exercise their duty of loyalty to the Plan and its participants by utilizing forfeited funds in the Plan for the benefit of Cigna instead of the sole interest of the Plan participants and beneficiaries.

117.     The Loyalty Defendants used these Plan assets for the purpose of reducing Cigna's contributions to the Plan, thereby saving Cigna millions of dollars each year at the expense of the Plan which received decreased employer contributions, and its participants and beneficiaries were forced to incur avoidable expense deductions to their individual accounts.

118.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars in losses.

119.     Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Loyalty Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in their Prayer for Relief.

120.     Each Loyalty Defendant is also liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

## COUNT III
### Breach of ERISA's Anti-Inurement Provision

121.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

122.     Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to

participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

123.    Because all forfeited Plan participant funds are initially placed in the Plan's trust, these forfeited funds are Plan assets.

124.    The use of the forfeited funds to defray employer contributions to the Plan in order to save the employer millions of dollars in funds that the employer would otherwise have to contribute to the Plan, caused the assets of the Plan to inure to the benefit of the employer in violation of 29 U.S.C. § 1103(c)(1).

125.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Loyalty Defendants are liable to restore to the Plan all losses caused by their breaches of ERISA's anti-inurement provision, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendant's breaches as set forth in their Prayer for Relief.

126.    Each Loyalty Defendant is also liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.    A Declaration that the Defendant has breached its fiduciary duties under ERISA;

D.      An Order compelling the Defendant to make good to the Plan all losses to the Plan resulting from Defendant's breaches of its fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the Defendant made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendant had fulfilled its fiduciary obligations;

E.      An order requiring the Company to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, as necessary to effectuate said relief, and to prevent the Company's unjust enrichment;

F.      Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

G.      An order enjoining Defendant from any further violations of its ERISA fiduciary responsibilities, obligations, and duties;

H.      Other equitable relief to redress the Company's illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan fiduciaries deemed to have breached their fiduciary duties;

I.      An award of pre-judgment interest;

J.      An award of costs pursuant to 29 U.S.C. § 1132(g);

K.      An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

L.      Such other and further relief as the Court deems equitable and just.

Dated: May 14, 2025                                Respectfully submitted,

_/s/ Mark K. Gyandoh_
Mark K. Gyandoh, Esquire
James A. Maro, Esquire
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Email: markg@capozziadler.com
        jamesm@capozziadler.com
Tel.: (610) 890-0200
Fax: (717) 232-3080

_Counsel for Plaintiffs and the Putative Class_